UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RONALD EVANS, | ) | |
| | ) | |
| Plaintiff. | ) | Case No. 25-cv-02788 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| AMERICAN EXPRESS NATIONAL BANK, | ) | |
| | ) | |
| Defendant, | ) | |

**MEMORANDUM OPINION AND ORDER**

*Pro se* Plaintiff, Ronald Evans, had an account with Defendant, American Express National Bank ("American Express"), which American Express closed for failure to make minimum payments. Subsequently, Mr. Evans sent a proposed contract modification to American Express, in which his outstanding debt of over $5000 would be settled by American Express's acceptance of three money orders of $40 each ($120 total). Among the proposed modifications to the contract was a prohibition on American Express's ability to seek a municipal judgment against Mr. Evans for repayment of the debt. American Express deposited the money orders. About a year later, it filed a consumer debt complaint in Illinois State Court against Mr. Evans, claiming that he still owed $5,378.37 on his closed account. Mr. Evans failed to appear, and the state court entered a default judgment.

Mr. Evans subsequently filed suit against American Express, accusing it of being in breach of its modified contract with him. American Express responds that it never agreed to Mr. Evans's proposed modification. It has moved to dismiss Mr. Evans's complaint for lack of jurisdiction pursuant to the *Rooker–Feldman* doctrine and for failure to state a claim. American Express also claims that it has not yet been properly served. Although the Court is skeptical of the application of *Rooker–Feldman* to this case, the Court finds that Mr. Evans has failed to establish diversity jurisdiction. The

Court also agrees that Mr. Evans has failed to state a claim. It therefore grants American Express's Motion [28] and dismisses Mr. Evans's complaint without prejudice.

## BACKGROUND

The following facts, drawn from Mr. Evans's complaint and other filings, are accepted as true for the purpose of resolving this motion. Some additional background information has been drawn from American Express's motion, when such facts do not contradict Mr. Evans's complaint or prejudice the Court's decision.

On August 30, 2021, Mr. Evans opened a credit card account with American Express, which was governed by a "Cardholder Agreement" between the Parties. (Dkt. 28 at *1, ex. A.) That account was later closed,[1] leaving a debt of about $5000[2] owed to American Express. (Dkt. 9, ex. D.) In May 2022, Mr. Evans sent to American Express a "Debt Settlement Agreement Plan (011)." (Dkt. 9, ex. A.) The terms of the proposed contract stipulated that American Express would accept $120 in full satisfaction of Mr. Evans's debt and that it would thereafter regard his debt as "paid in full."[3] (*Id.*) It would also be required to report the satisfaction of the debt to the major credit reporting agencies. Finally, American Express would agree "not to pursue any municipal judgements" against Mr. Evans related to his account with the company. (*Id.*) Mr. Evans signed and dated the contract and had it notarized. (*Id.*) It appears that he also handwrote "American Express" on the other side of the page;

---

[1] The Court is unable to ascertain the date on which Mr. Evans's account closed. Mr. Evans has submitted evidence indicating that it closed on June 2, 2022 (dkt. 9, ex. B), but he also referred to the account as already closed in his proposed contract modification, which is dated April 28, 2022 (*id.*, ex. A). American Express claims that it closed the account in November 2021 (dkt. 28 at *2), but its cited evidence only suggests June 2, 2022 as the date of closure (*id.*, ex. B).

[2] The Court has not seen evidence detailing the precise size of Mr. Evans's debt at the time that he sent his proposed modification to American Express. Our estimate of "about $5000" is based on the default judgment of $5,378.37 that the state court entered against Mr. Evans about two years later. (Dkt. 28, ex. D.)

[3] Mr. Evans's "Settlement Plan" contains many words presented in all capital letters; the Court such capitalization in this and future quotations.

it is unclear if this was supposed to indicate a signature. (*Id.*) There is no evidence that American Express itself signed the proposed contract. (*See id.*)

Mr. Evans sent this contract, along with three money order checks of $40 each, totaling $120, to American Express. (*Id.* ex. A, B, C.) On each check, Mr. Evans handwrote: "Acceptance of this payment constitutes acceptance of all terms and conditions of Debt Settlement Agreement Plan (011) being met." (*Id.* ex C.) On May 17 and 20, 2022, American Express deposited the money order checks, each with the comment "Payment Received – Thank You." (*Id.* ex. B.) Mr. Evans regards this act as American Express's acceptance of his contract. (*Id.* at *8.)

On April 26, 2023, American Express filed a complaint in Illinois state court, seeking to collect on $5,378.37 that Mr. Evans allegedly owed on his closed account. *American Express National Bank v. Richard Evans*, Ill. Cir. Ct. no. 20234002376 (2023); *see* dkt. 28, ex. C at *1. Mr. Evans apparently never appeared in the case, and the Illinois court entered a default judgment on May 30, 2024. Dkt. 28, ex. D. American Express subsequently requested an order garnishing Mr. Evans's wages until the sum of $6,146.34 (representing the judgment of $5,378.37 plus costs) had been paid. (Dkt. 9 at *8–9, ex. D.) American Express has also reported the debt as delinquent to least TransUnion (and likely to the other credit services as well). (Dkt. 35.)

Mr. Evans claims that by pursuing a collection case against him in state court, and by continuing to report the debt to the credit agencies as outstanding, American Express has violated the terms of the contract that it allegedly entered when it accepted the money order checks that he sent to the company. (Dkt. 9 at *8–9.) Mr. Evans also claims to have been forced to sleep in his car owing to a low credit rating resulting from the debt being regarded as outstanding. (*Id.*) He now brings this suit for breach of contract.

**LEGAL STANDARD**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) asks the court to dismiss an action over which it allegedly lacks subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). "The burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction." *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), overruled on other grounds *by Minn–Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012). When considering a Rule 12(b)(1) motion to dismiss, the court may look beyond the allegations of the complaint and may consider other submitted evidence. *See Johnson v. Apna Ghar, Inc.*, 330 F.3d 999, 1001 (7th Cir. 2003) (quoting *id.*)

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a complaint "must contain sufficient factual matter… to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1960 (2007)). A complaint is facially plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When considering a motion to dismiss a complaint under either Rule, courts accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999); *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (per curiam).

**DISCUSSION**

II. **Subject-Matter Jurisdiction**

    A. Rooker–Feldman *Doctrine*

American Express argues that, under the *Rooker–Feldman* doctrine, this Court lacks subject-matter jurisdiction over Mr. Evans's case. That doctrine prohibits this Court from hearing cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered

before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Hemmer v. Indiana State Bd. of Animal Health*, 532 F.3d 610, 613 (7th Cir. 2008) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

American Express argues that ruling in favor of Mr. Evans would constitute reversal or modification of the default judgment entered by the Illinois court. (Dkt. 28 at *5.) This Court isn't so sure. Mr. Evans has not asked this Court to reverse the state court judgment; rather, he requests damages for breach of contract. As an initial matter, Mr. Evans claims that he has been harmed not only by American Express instigating an allegedly improper collection action, but also by American Express continuing to report his debt to credit agencies. (Dkt. 9 at *8–9.) That second claim has nothing to do with the Illinois state court judgment, so *Rooker–Feldman* does not bar Mr. Evans from adjudicating it in federal court. *See Hemmer*, 532 F.3d at 613 (*Rooker–Feldman* only applies to issues on which the plaintiff has been a "state-court loser").

It is a closer question whether *Rooker–Feldman* strips this court of jurisdiction over Mr. Evans's claim that American Express pursued an improper collection action. The Seventh Circuit recently issued a fractured *en banc* opinion covering the applicability of *Rooker–Feldman*. *Gilbank v. Wood Cnty. Dep't of Hum. Servs.*, 111 F.4th 754 (7th Cir. 2024). Although the *en banc* panel had many points of disagreement, "All judges agree that we should no longer rely on the 'inextricably intertwined' language that has contributed to confusion in applying the *Rooker–Feldman* doctrine." *Id.* at 761. A majority of the judges also held that *Rooker–Feldman* only applies if "state-court judgments *caused* the alleged injury underlying the claim." *Id.* at 767 (emphasis added). The Supreme Court has likewise held that "If a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party..., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" *Exxon Mobil*, 544 U.S. at 293 (quoting *GASH Assocs. v. Rosemont*, 995 F.2d 726, 728 (7th Cir.1993)). Additionally, this Court

– 5 –

notes that the Illinois state court judgment was a *default* judgment, and therefore not a judgment based on a litigated issue, which may impact its preclusive effect. *Cf. In re Catt*, 368 F.3d 789 (7th Cir. 2004) (default judgments may preclude collateral estoppel owing to lack of litigation).

Here, Mr. Evans's alleged contractual injury was complete when American Express filed its collection action, which necessarily precedes the Illinois court judgment. *See Gilbank*, 111 F.4th at 768–69 (injury completed before state court judgment is not barred by *Rooker–Feldman*, even if federal adjudication requires questioning state court legal conclusions); *Hydrite Chem. Co. v. Calumet Lubricants Co.*, 47 F.3d 887, 891 (7th Cir. 1995) ("Proof of liability is complete when the breach of contract is shown.") (citing *Stromberger v. 3M Co.*, 990 F.2d 974, 976 (7th Cir.1993)). However, the damages arising from that alleged injury certainly resulted, at least in part, from the judgment. On balance, this Court is not certain whether *Rooker–Feldman* applies. In light of the holdings below, this Court declines to rule on whether *Rooker–Feldman* bars consideration of Mr. Evans's improper collection action claim. However, it is certain that *Rooker–Feldman* does not require dismissal of Mr. Evans's entire complaint, given his claims of breach of contract owing to American Express reporting his debt to credit agencies.

B.     *Diversity Jurisdiction*

Mr. Evans claims that this Court has jurisdiction over his case on the basis of diversity. (Dkt. 9 at *6–7.) Although American Express has not raised any argument against the propriety of diversity jurisdiction in this case, this Court has an obligation to raise the issue of subject matter jurisdiction *sua sponte* if it has reason to doubt that jurisdiction exists. *Joyce v. Joyce*, 975 F.2d 379, 386 (7th Cir. 1992). However, "*sua sponte* dismissals without prior notice or opportunity to be heard are 'hazardous.'" *Id.* (quoting *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir.1987)). The Court therefore raises the issue now, to give Mr. Evans an opportunity to cure the defect if he attempts to amend his complaint.

Diversity jurisdiction requires that the amount in controversy meet or exceed $75,000. 28 U.S.C. § 1332(a). Mr. Evans alleges damages exceeding $10,000,000. (Dkt. 9 at *8–9.) While this

Court "must accept as true all well-pleaded factual allegations," *Long*, 182 F.3d at 554, that acceptance does not extend to a claim that is not "plausible on its face," *Iqbal*, 556 U.S. at 678. Here, the Court sees no explanation for damages in the quantity alleged by Mr. Evans. The judgment entered against him amounts to $6,146.34, so that much is certain. Mr. Evans's claim of being forced into homelessness could also plausibly support damages, but without allegations leading at least to a reasonable inference of damages in a concrete amount, this Court cannot say that Mr. Evans has alleged damages exceeding $6,146.34.

At this juncture, the Court does not believe that Mr. Evans has successfully established that there is at least $75,000 in controversy. Accordingly, it dismisses Mr. Evans's complaint without prejudice for lack of jurisdiction.

## II. Accord and Satisfaction

Even if this Court does have jurisdiction over all or part of Mr. Evans's complaint, it does not find within that complaint a legally cognizable claim for relief. Mr. Evans's proposed "Debt Settlement Agreement Plan" functioned as a modification of his existing contract, the "Cardholder Agreement," with American Express. In this modification, he proposed an accord, namely, that American Express would accept $120, paid right away, in satisfaction of Mr. Evans's preexisting duty to pay off his credit card debt of roughly $5000. (Dkt. 9, ex. A.) It is blackletter contractual law that an accepted and performed accord will satisfy the unperformed original contractual duty. Restatement (Second) of Contracts § 281 (1981); *Progressive N. Ins. Co. v. Ayala*, 2021 IL App (1st) 200384, ¶ 14. Under Illinois law, accord and satisfaction requires "(1) a *bona fide* dispute, (2) an unliquidated sum, (3) consideration, (4) a shared and mutual intent to compromise the claim, and (5) execution of the agreement." *Progressive*, 2021 IL App (1st) ¶ 14 (quoting *Saichek v. Lupa*, 204 Ill. 2d 127, 135 (2003)).

American Express argues that it did not intend to agree to Mr. Evans's proposed accord. (Dkt. 28 at *7). Except in a few special circumstances, which don't apply here, no contract can be formed

without acceptance of an offer. Restatement (Second) of Contracts § 17. Mr. Evans has not alleged that American Express provided a formal statement of agreement. (*See* dkt. 9). However, acceptance of an offer can also be "inferred wholly or partly from conduct." Restatement (Second) of Contracts, § 4. Here, the terms of Mr. Evans's Debt Settlement Agreement Plan specified that American Express could accept the contract by accepting the money order checks he sent them. (Dkt. 9, ex. A, ¶ 6.) Each money order check contained conspicuous language stating that its acceptance of the checks would constitute acceptance of Mr. Evans's accord. (*Id.*, ex. B.) American Express deposited those checks, and that may constitute behavior from which acceptance could be objectively inferred.

However, accord and satisfaction also requires that the parties be engaged in a *bona fide* dispute. *Progressive*, 2021 IL App (1st) ¶ 14. Absent such a dispute, intent to enter the contract cannot be inferred from the mere deposit of a check. *Shea, Rogal & Assocs., Ltd. v. Leslie Volkswagen, Inc.*, 216 Ill. App. 3d 66, 70 (1991) (without a *bona fide* dispute, "a person may [not] unilaterally write a check to pay a bill, include a notation that the amount tendered is in full satisfaction of the debt, and expect to prevail on the accord and satisfaction theory if the receiver of the check then deposits or cashes it."). Such a dispute could be shown, for example, by evidence of communications between the parties expressing doubts about the calculation of the debt, *Progressive*, 2021 IL App (1st) ¶ 22; or by allegations that the parties had already begun discussing an accord prior to the formal offer, *Shea, Rogal & Assocs.*, 216 Ill. App. 3d 66, 71 (1991). Here, Mr. Evans has not provided any allegation that a *bona fide* dispute existed. From his complaint, it appears that he sent his contract and the money orders to American Express completely out of the blue, without any prior communications. This complaint therefore does not provide the Court with a sufficient basis for inferring from American Express's conduct that it agreed to enter the contract.

The Court finds that American Express never accepted Mr. Evans's Debt Settlement Agreement Plan. As such, Mr. Evans's Cardholder Agreement with American Express never became

modified, and Mr. Evans has not adequately pled a claim for breach of contract. The Court therefore dismisses Mr. Evans's claim for failure to state a claim, independently of its dismissal for want of jurisdiction.

### III. Service of Process

Despite the fact that American Express has clearly received adequate notice of this lawsuit, it claims to have not yet been properly served. (Dkt. 28 at *5–6.) Since the Court is dismissing Mr. Evans's complaint, it declines to rule on whether service of process has been effectuated in accordance with Federal Rule of Civil Procedure 4. However, the Court notes that, if Mr. Evans decides to amend his complaint, he may need to properly serve American Express in order to continue his suit. (*See* dkt. 28 at *5–6.)

## CONCLUSION

For the reasons given above, the Court grants Defendant's motion [28] and dismisses Mr. Evans's complaint [9] without prejudice for lack of subject-matter jurisdiction and for failure to state a claim. Mr. Evans may file an amended complaint within 21 days if he believes he can allege facts sufficient to overcome the legal deficiencies identified in this opinion.

**IT IS SO ORDERED.**

Date: 12/1/2025

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge