UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RONALD EVANS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 25-cv-02788 |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| AMERICAN EXPRESS NATIONAL | ) | |
| BANK, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

*Pro se* Plaintiff Ronald Evans had a credit card account with Defendant American Express National Bank ("American Express"). American Express closed that account for failure to make minimum payments. Subsequently, Mr. Evans sent an accord and satisfaction contract to American Express, which proposed that his outstanding debt of over $5000 would be settled by American Express's acceptance of three money orders of $40 each ($120 total). American Express accepted the money orders and later filed a collection action for the remaining portion of Mr. Evan's debt. He argues that this constituted a breach of his accord and satisfaction contract with American Express, and he has sued to enforce that contract. Before the court today is American Express's second motion to dismiss Mr. Evan's complaint for failure to state a claim and for lack of subject-matter jurisdiction. Because the Court finds that American Express never accepted Mr. Evan's accord and satisfaction contract, the Court grants the motion [44] and dismisses Mr. Evan's complaint with prejudice.

**BACKGROUND**

The following facts, drawn from Mr. Evans's amended complaint, initial complaint, and other filings, are accepted as true for the purpose of resolving this motion. Some additional background

information has been drawn from American Express's motion, when such facts do not contradict Mr. Evans's amended complaint or prejudice the Court's decision.

On August 30, 2021, Mr. Evans opened a credit card account with American Express, which was governed by a "Cardholder Agreement" between the Parties. That account was later closed, leaving a debt of about $5000 owed to American Express. At oral argument, Mr. Evans represented that he called American Express at some point in spring 2022 to dispute his debt. He said that he spoke with a representative who told him that if he wanted to send them a discharge contract, they would review it. In May 2022, Mr. Evans sent to American Express a contract ("the Contract") titled "Debt Settlement Agreement Plan (011)." The terms of the Contract stipulated that American Express would accept $120 in full satisfaction of Mr. Evans's debt and that it would thereafter regard his debt as "paid in full."[1] Dkt. 9, ex. A. Additionally, American Express would agree "not to pursue any municipal judgements" against Mr. Evans. Mr. Evans signed and dated the Contract and had it notarized. It appears that he also handwrote "American Express" on the other side of the page; it is unclear if this was supposed to indicate a signature. There is no evidence that American Express itself signed the proposed Contract.

Mr. Evans sent this proposal, along with three money order checks of $40 each, totaling $120, to American Express. On each check, Mr. Evans handwrote: "Acceptance of this payment constitutes acceptance of all terms and conditions of Debt Settlement Agreement Plan (011) being met." On May 17 and 20, 2022, American Express deposited the money order checks. Mr. Evans regards this act as American Express's acceptance of his proposal, forming the Contract.

On April 26, 2023, American Express filed a complaint in Illinois state court, seeking to collect on $5,378.37 that Mr. Evans allegedly owed on his closed account. *American Express National Bank v.*

---

[1] Mr. Evans's "Settlement Plan" contains many words presented in all capital letters; the Court will omit such capitalization in this and future quotations.

*Richard Evans*, Ill. Cir. Ct. no. 20234002376 (2023). Mr. Evans apparently never appeared in the case, and the Illinois court entered a default judgment on May 30, 2024. Mr. Evans claims that by pursuing a collection case against him in state court, and by continuing to report the debt to the credit agencies as outstanding, American Express has violated the terms of the Contract that it allegedly entered when it accepted the money order checks that he sent to the company.

Mr. Evans filed his initial complaint on March 17, 2025. Dkt. 9. On December 1, 2025, this Court dismissed Mr. Evans's complaint without prejudice for failure to state a claim. *Evans v. Am. Express Nat'l Bank*, No. 25-CV-02788, 2025 WL 3443290, at *1–2 (N.D. Ill. Dec. 1, 2025) [hereinafter "*Evans I*"]. On December 15, 2025, Mr. Evans filed an amended complaint, which alleges substantially the same facts. Dkt. 40 [hereinafter "Am. Compl."]. On January 5, 2026, American Express filed the instant motion, its second motion to dismiss. Dkt. 44 [hereinafter "Def. Br."]. The parties timely filed the response and reply briefs, and oral arguments were held on February 27, 2026, after which the Court took the motion under consideration.

## LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) asks the court to dismiss an action over which it allegedly lacks subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). "The burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction." *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), overruled on other grounds *by Minn–Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012). When considering a Rule 12(b)(1) motion to dismiss, the court may look beyond the allegations of the complaint and may consider other submitted evidence. *See Johnson v. Apna Ghar, Inc.*, 330 F.3d 999, 1001 (7th Cir. 2003) (quoting *id.*)

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a complaint "must contain sufficient factual matter… to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting

*Corp. v. Twombly*, 127 S. Ct. 1955, 1960 (2007)). A complaint is facially plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When considering a motion to dismiss a complaint under either Rule, courts accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999); *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (per curiam).

## DISCUSSION

### I.      Law of the Contract

Several of the legal questions considered below turn on whether the alleged Contract is governed by Utah law or Illinois law. Although it does not spend much time developing the argument, American Express claims that Mr. Evan's Contract must be governed by Utah law, as specified by the choice of law provision in the Cardholder Agreement. Def. Br. *4, 20. However, Mr. Evans presumably drafted his proposed contract in Illinois, which could mean that it should be governed by Illinois law. Both states have adopted the Restatement (Second) of Conflict of Laws's "most significant relationship" approach for contractual conflicts. *See Rico Industries, Inc. v. TLC Group, Inc.*, 123 N.E.3d 567, 588 (Ill. App. Ct. 2018); *Waddoups v. Amalgamated Sugar Co.*, 54 P.3d 1054, 1059 (Utah 2002). The Court concludes that the law of Utah does indeed govern the Contract, and it does so regardless of whether the Contract constitutes a modification to the cardholder agreement or an independent contract.

In its previous order, this Court characterized the contract as a modification. *See, e.g., Evans I* at *1. Although the Court did not justify that characterization, it fits with the Contract's function to modify the debt repayment terms of the Cardholder Agreement. If the Contract is a modification, then under § 187 of the Restatement, Utah law certainly governs. "Section 187 of the Restatement

– 4 –

applies when, as here, the parties have made an express choice of law in their contract," *Dancor Const., Inc. v. FXR Const., Inc.*, 64 N.E.3d 796, 812 (Ill. App. Ct. 2018), and effectively binds the parties to the choice-of-law provision in their contract. Here, the choice-of-law provision of the Cardholder Agreement specifies that Utah law controls, and so the Restatement (and by extension Illinois) will respect that choice.

On the other hand, if the Contract constitutes an independent contract, rather than a modification, then there is no choice of law provision. Accordingly, the Court must examine the "most significant contacts" under Restatement § 188 to determine the governing law. The Restatement provides the following factors to determine which state has the most significant contacts:

a) the place of contracting;
b) the place of negotiation of the contract;
c) the place of performance;
d) the location of the subject matter of the contract; and
e) the domicile, residence, nationality, place of incorporation and places of business of the parties.

Here, most of the factors favor Utah. If a contract was formed, then it happened when American Express accepted the money orders, making Utah the place of contracting. For the same reason, Utah was also likely the place of performance and the location of the Contract's subject matter. The only factors that may favor Illinois are the place(s) of negotiation and the residence of the parties, but those factors are likely split between Utah and Illinois.

The balance of the Restatement factors leans toward Utah. The Court therefore rules that Utah law governs the Contract, regardless of whether it is a modification or a stand-alone contract.

## II.     Diversity Jurisdiction

In this Court's order on American Express's first motion to dismiss, the Court *sua sponte* raised the issue of whether the amount in controversy equaled or exceeded the jurisdictional amount of $75,000. *Evans I* at *3–4; *see* 28 U.S.C. § 1332(a). American Express now argues in the instant motion

that, under Utah law, Mr. Evans's damages cannot exceed what he would have received if the contract were performed properly. Def. Br. *6 (citing *John Call Eng'g, Inc. v. Manti City Corp.*, 795 P.2d 678, 681 (Utah Ct. App. 1990)). However, this does not seem to be a correct statement of the law. The case cited by American Express says that its rule pertains to *construction* contracts, not all contracts. *John Call Eng'g*, 795 P.2d at 681 n.3. In fact, Utah law does allow actual damages beyond the value of performance when one party's breach does additional harm to the other party. Like most states, Utah law holds that "Breach of contract damages seek to place the aggrieved party in the same economic position the party would have been in if the contract was not breached." *Eleopulos v. McFarland & Hullinger*, LLC, 2006 UT App 352, ¶ 10. Here, Mr. Evans claims that he has been forced into homelessness by American Express's alleged breach, and has suffered exacerbated medical problems as a result. If proven, damages from such harms could easily exceed $75,000. The Court therefore finds that the amount in controversy is plausibly greater than $75,000, and accordingly that it has subject-matter jurisdiction over the complaint.

### III.  Breach of Contract

Mr. Evans accuses American Express of breach of contract. American Express argues that it never entered into a contract with Mr. Evans, and that accordingly, he has failed to state a claim. The Court agrees with American Express.

Under Utah Law, an accord and satisfaction contract is considered valid if three elements are present: "(1) a bona fide dispute over an unliquidated amount, (2) a payment made in full settlement of the entire dispute, and (3) an acceptance of the payment." *S & G Inc. v. Intermountain Power Agency*, 913 P.2d 735, 738–39 (Utah 1996). Additionally, "Where… the underlying claim is liquidated and certain as to amount, separate consideration must be found to support the accord." *Sugarhouse Fin. Co. v. Anderson*, 610 P.2d 1369, 1372 (Utah 1980). Here, American Express argues that there is no bona fide dispute as to the amount. However, at oral argument Mr. Evans represented that an agent of

American Express told him that it would consider any discharge contract that he wanted to send them. A claim like that would likely not make it past summary judgment, but at the motion to dismiss stage, it is likely sufficient to establish that a dispute existed. And there is no dispute that the other basic elements are satisfied by Mr. Evans's amended complaint.

But Mr. Evans has not, and almost certainly cannot, show that he supplied any additional consideration. The amount of his debt was certain, even if his obligation to pay it in full was arguably in dispute. Thus, under Utah law, he was required to bring something new to the table that he was not already contractually obligated to do. The fact that he did not do so is fatal to his complaint. Even if American Express really did accept his contract, the lack of new consideration means that "the obligee's promise to accept a substitute performance is unenforceable." *Id.*

As such, the Court finds that the Contract between Mr. Evans and American Express was either never formed or is unenforceable. His complaint therefore must be dismissed.

## CONCLUSION

The Court grants American Express's motion [44] and dismisses Mr. Evan's amended complaint with prejudice.

**IT IS SO ORDERED.**

Date: 3/19/2026

Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge